

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIO GONZALEZ-QUINTANA, | § | |
| Movant, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. B-02-059 |
| UNITED STATES OF AMERICA, | § | CRIMINAL NO. B-01-075-01 |
| Respondent. | § | |

United States District Court
Southern District of Texas
FILED

JUL 1 5 2002

Michael N. Milby
Clerk of Court

**UNITED STATES' ANSWER AND MOTION TO DISMISS
GONZALEZ-QUINTANA'S MOTION FOR RELIEF UNDER
RULE 8(A), 28 U.S.C. FOLL. § 2255, AND SUPPORTING BRIEF**

The United States of America, Plaintiff-Respondent, by the United States Attorney for the Southern District of Texas, answers and moves this court to dismiss Gonzalez-Quintana's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.

1. **Jurisdiction.** This court has jurisdiction under 28 U.S.C. § 2255.

2. **Procedural history.** On February 14, 2001, Mario Gonzalez-Quintana ("Gonzalez") was charged in a one-count indictment with being an alien unlawfully found in the United States after deportation following an aggravated felony conviction (illegal re-entry), in violation of 8 U.S.C. §§ 1326(a) and 1326(b) (Doc. 1). On April 5, 2001, Gonzalez pleaded guilty to the charge in the indictment before the Honorable Hilda G. Tagle with the benefit of a plea agreement (Doc. 18, 19). Under the terms of the plea agreement, the United States agreed to recommend that Gonzalez receive maximum credit for acceptance of responsibility and a sentence at the bottom end of the guidelines range (Doc. 19, ¶ 2). Gonzalez agreed to waive his right to appeal his sentence if his sentence was within the guidelines range as determined by the court (Doc. 19, ¶ 9). The plea

agreement did not mention any waiver of Gonzalez's right to seek habeas corpus relief by means of a motion brought under 28 U.S.C. § 2255.

On June 1, 2001, Gonzalez, through his counsel, filed a written statement of no objections to the presentence report ("PSR") (Doc. 22).

At the sentencing hearing on July 2, 2001, Gonzalez's counsel orally moved for a downward departure, which this court denied (Doc. 25). This court sentenced Gonzalez to 46 months in the custody of the Bureau of Prisons, to be followed by a 3-year term of supervised release, no fine, and a $100 mandatory special assessment (Doc. 25, 27). The district court entered its judgment of conviction and sentence on July 13, 2001 (Doc. 27).

On July 2, 2001, Gonzalez signed a statement of non-appeal, which was filed with the United States District Court on the following day (Doc. 26). The statement provides:

> I, the undersigned defendant in this cause, hereby declare that my attorney has advised me of my right to appeal all matters relating to the sentencing in this case at no cost to me. I wish to inform the Court that I do not wish to appeal my sentence.

(Doc. 26).

Gonzalez did not appeal his sentence or conviction and the judgment became final ten (10) days later on July 23, 2001. On March 28, 2002, Gonzalez timely filed a document styled "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," within the one-year limitation period to seek relief by way of a § 2255 motion, *United States v. Flores*, 135 F.3d 1000 (5th Cir. 1998), *cert. denied*, __ U.S. ___, 119 S.Ct. 846 (1999). The United States was ordered to respond.

3. **Statement of facts.** The statement of facts, as set forth in the PSR, is attached hereto as Appendix A.

4.  **Allegations**. In support of his motion to vacate, Gonzalez claims that his counsel rendered ineffective assistance by failing to argue for a downward departure on the grounds of his ineligibility for minimum security confinement, drug treatment program, and pre-release custody as a result of his status as a deportable alien. Gonzalez claims these grounds constituted significant mitigating factors that should have been considered by the sentencing court. He contends that he should have been awarded a two (2) level downward adjustment because his alienage adversely affected the duration and conditions of his term of imprisonment. He does not claim to be innocent of the offense, nor does he claim any viable defenses were overlooked by counsel. This precise issue has been rejected in *United States v. Garay*, 235 F.3d 230 (5th Cir. 2000), and should be rejected here.[1]

5.  **Transcripts.** The pleadings are on file with the court. The rearrignment and sentencing hearings have not been transcribed because Gonzalez did not appeal to the Fifth Circuit.

6.  **Answer and motion to dismiss.**

    A.  <u>Standard for Ineffective Assistance of Counsel.</u>

Gonzalez's claims of ineffective assistance of counsel are reviewed under the now well-established *Strickland* standard: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result."

---

[1] In his § 2255 motion, Gonzalez alleges that he asked his counsel Jesus Rick Canales to appeal his sentence seeking a reduction, but his counsel failed to do so. Gonzalez claims he was unaware of his counsel's intention not to file a timely appeal on his behalf. *See* Gonzalez's § 2255 motion at p. 4, ¶ 11(d). He does not claim this is a separate issue, but merely offers it as an explanation as to why he did not appeal. He appears to have abandoned this quasi-issue because he never mentions it again in either his motion or his supporting brief. In any event, he clearly and unequivocally waived his right to appeal his sentence in his written plea agreement (Doc. 19, ¶ 9). Furthermore, he signed a written statement of non-appeal indicating that he had decided not to appeal (Doc. 26). Nowhere in his motion or brief does he claim that his plea or statement of non-appeal was anything other than intelligent, knowing, and voluntary.

*Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064 (1984). To succeed on such a claim, the defendant must first show that his counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2065; *Prate v. Cain*, 142 F.3d 226, 230 (5th Cir. 1998). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance; and, "'[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'." *Id.* (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).

Second, he must show that he was prejudiced by counsel's ineffective assistance. The prejudice prong, however, is more than just an outcome determinative test. This was rejected by the Supreme Court in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838 (1993). Prejudice under *Fretwell* requires the petitioner to show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Fretwell*, 506 U.S. at 368, 113 S.Ct. at 842 (quoting also *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574 (1986) ("the essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect")). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 371, 113 S.Ct. at 844; *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 176 (5th Cir. 1998). Not only must prejudiced be alleged, but it must be affirmatively proven. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). If the

defendant fails to establish prejudice, this court need not reach whether counsel's performance was deficient. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

    B.    <u>Alienage is not a Basis for Downward Departure.</u>

The Fifth Circuit's decision in *United States v. Garay*, 235 F.3d 230 (5th Cir. 2000), is directly on point and forecloses Gonzalez's assignment of error. The facts and legal arguments in *Garay* are identical to the present case. Like Gonzalez, Garay was convicted of being an alien unlawfully found in the United States after deportation (illegal re-entry), in violation of 8 U.S.C. §§ 1326(a) and 1326(b), before United States District Court Judge Hilda Tagle (Doc. 1, 14). *Garay*, 235 F.3d at 231. In his objections to the presentence investigation report, Garay urged the Honorable Judge Tagle to depart downward from the Sentencing Guidelines because "'he is an alien and will be deported.'" *Id.* "Garay also contended that he merited a downward departure because as an alien, he would face more severe conditions of incarceration because of his ineligibility for Bureau of Prisons programs such as drug and alcohol treatment, prison camp, and release to a halfway house." *Id.* Here, Gonzalez makes exactly the same arguments. In *Garay*, Judge Tagle denied the request, stating that there was nothing atypical about Garay's case that would take it outside the "heartland" of immigration cases to which the guidelines applied. *Id.* On appeal, Garay contended that his sentence must be vacated because the district court erroneously believed it lacked authority to depart downward on the basis of his status as a deportable alien. *Id.* at 232. Garay conceded that his argument was foreclosed by the Fifth Circuit's decision in *United States v. Nnanna*, 7 F.3d 420 (5th Cir. 1993), which held that, in the case of a deportable alien convicted of bank fraud, "[c]ollateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien

may incur following a federal conviction are not a basis for downward departure. *Id.* at 422. Garay argued that *Nnanna* must be reconsidered in light of the Supreme Court's decision in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996), which held that federal courts can no longer categorically proscribe a basis for departure unless the Guidelines have explicitly forbidden consideration of that factor. *Id.* at 109, 116 S.Ct. 2035. Consequently, Garay argued that in light of *Koon*, *Nnanna*, which categorically proscribed alienage and its attendant consequences as a basis for downward departure, was no longer good law. *Garay*, 235 F.3d at 233. However, *Garay* held "that Garay's status as a deportable alien, as an element of the crime for which he was sentenced, is not an 'aggravating or mitigating circumstance of a kind or degree not adequately taken into consideration by the Commission' and therefore is not a permissible basis for downward departure in this immigration case." *Garay*, 235 F.3d at 234 (quoting 18 U.S.C. § 3553(b)). Garay's status as a deportable alien had necessarily been taken into account by the Sentencing Commission in establishing the offense level for the crime. *Id.* *Garay* followed the Sixth, Seventh, and Ninth Circuits in deeming alienage an impermissible basis for departure when, as here, status as a deportable alien had already been taken into account in establishing the offense level for illegal re-entry. *Id.* *See United States v. Ebolum*, 72 F.3d 35, 38 (6th Cir. 1995); *United States v. Gonzalez-Portillo*, 121 F.3d 1122, 1124-25 (7th Cir. 1995); *United States v. Martinez-Ramos*, 184 F.3d 1055, 1058 (9th Cir. 1999); *see also United States v. Marin-Castaneda*, 134 F.3d 551, 555-56 (3d Cir. 1998). Just as is *Garay*, because Gonzalez's status as a deportable alien had already been taken into account in establishing the offense level for illegal re-entry, alienage is an impermissible basis for departure. Gonzalez cannot show any prejudice. Under *Garay*, the district court was prohibited from granting him any relief. Gonzalez's counsel's

performance was not deficient by failing to argue for a departure based upon alienage, which argument has been squarely rejected by *Garay*.

*Garay* and *Ebolum* also distinguished the D.C.'s decision in *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), a case relied upon by Gonzalez. *Smith* held, prior to *Koon*, that downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause a "fortuitous increase" in the severity of his incarceration. *Id.* at 655. The *Smith* majority decided that a defendant's status as a deportable alien could be a grounds for departure, albeit in "highly infrequent" situations, and remanded to the district court to determine whether such a departure was warranted in that case. *Id.* at 655-56. Gonzalez's, Garay's and Ebolum's cases, however, involve a significantly different situation than that presented in *Smith*. The defendant in *Smith* was sentenced under USSG § 2D1.1 for violations of 21 U.S.C. § 841, possession of cocaine base with intent to distribute. *Smith*, 27 F.3d at 650. The guideline at issue in *Smith* is applicable to all defendants, not just aliens, who are convicted of illegally manufacturing, importing, exporting, or distributing drugs, or of possession of drugs with intent to commit these offenses. USSG § 2D1.1. In contrast, Gonzalez, Garay and Ebolum were sentenced under USSG § 2L1.2 for a violation of 8 U.S.C. § 1326, illegal re-entry by a deported alien. The crime by which Gonzalez, Garay and Ebolum were found guilty can be committed only be a deportable alien. Section 2L1.2 was formulated to provide guideline ranges for, *inter alia*, Gonzalez's, Garay's and Ebolum's crime of illegal re-entry. "Absent any credible argument or evidence to the contrary, the [Sixth Circuit assumed] that the Sentencing Commission took deportable alien status into account when formulating a guideline that applies almost invariably to crimes, such as 8 U.S.C. § 1326, that may be committed only by aliens whose conduct makes

them deportable." *Ebolum*, 72 F.3d at 38. Although the D.C. Circuit permitted a departure for alienage in a drug case, no such departure is permitted where the crime of conviction is illegal re-entry because alienage has already been factored into the guidelines under section 2L1.2. *Id.*; *Garay*, 235 F.3d at 234. Gonzalez has shown neither prejudice nor deficient performance. His assignment of error must be rejected.

8. **Conclusion.** For these reasons, Gonzalez's motion to vacate sentence under 28 U.S.C. § 2255 is without merit and should be dismissed with prejudice pursuant to Rule 8(a), Rules - § 2255 Proceedings.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

_____
David H. Peck
Assistant United States Attorney
910 Travis, Suite 1500
P. O. Box 61129
Houston, Texas 77208-1129
(713) 567-9369
S.D. TX. ID No. 6295
TX Bar Card No. 15701980

## CERTIFICATE OF SERVICE

I, David H. Peck, Assistant United States Attorney, certify that a copy of this answer, motion to dismiss Mario Gonzalez-Quintana's motion for relief under § 2255 and supporting brief has been served by placing it in the United States mail, postage prepaid, on July 15, 2002, addressed to:

Mario Gonzalez-Quintana, pro se
Registration No. 40997-079
Cornell Correctional
3711 Wright Avenue
Big Spring, Texas 79720

David H. Peck
Assistant United States Attorney

## APPENDIX A

STATEMENT OF FACTS FROM:

*UNITED STATES V. MARIO GONZALEZ-QUINTANA*
CRIMINAL NO. B-01-75-1

On January 22, 2001, United States Border Patrol agents were conducting routine aircraft check operations at Valley International Airport in Harlingen, Texas, when they encountered two (2) subjects entering the security checkpoint. The first subject was identified as Ricardo Chavez-Gonzalez who falsely claimed to be a United States citizen, but later confessed to being a citizen and national of Mexico (PSR, ¶ 3).

The second subject was identified as Mario Gonzalez-Quintana. He claimed to be a resident alien but was unable to provide proper identification. Gonzalez-Quintana admitted to the agents that he had purchased two airline tickets, one for himself and one for Chavez-Gonzalez (PSR, ¶ 4).

A further investigation revealed that Gonzalez-Quintana was a citizen of Mexico and had been convicted on November 30, 1989, in the United States District Court in McAllen, Texas of possession with intent to distribute less than 50 kilograms of marihuana, in Cause No. M-89-392-1. He was sentenced to 27 months in the custody of the Bureau of Prisons. On July 11, 1991, he was deported to Mexico. Gonzalez-Quintana was detained and transported to the Border Patrol Station in Harlingen for processing (PSR, ¶ 5, 24, 34).

On September 25, 1998, and again on August 18, 2000, Gonzalez-Quintana was deported to Mexico (PSR, ¶¶ 29, 30).

Gonzalez-Quintana did not have permission from the Attorney General to return to the United States after being deported (PSR, ¶ 6).